UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JEFF M. GREEN,

                Plaintiff,

      v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

              Defendant.

CASE NO. 10cv5848-BHS-JRC

REPORT AND
RECOMMENDATION ON
PLAINTIFF'S COMPLAINT

NOTING DATE: December 30, 2011

      This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed. (See ECF Nos. 12, 18, 19).

      Based on the relevant record, the Court concludes that although the ALJ correctly analyzed the medical testimony, he erroneously relied solely on the Medical-Vocational Guidelines when concluding that there were jobs existing in significant numbers in the

national economy. Also, he improperly evaluated plaintiff's credibility and lay witness testimony. For these reasons, this matter should be reversed and remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration.

<u>BACKGROUND</u>

Plaintiff, JEFF M. GREEN, was born in 1961 and was forty-five years old on his amended date of alleged disability onset of June 1, 2006 (Tr. 44, 127). He worked as a seafood salesman for sixteen years until he was laid off on November 12, 2005 (Tr. 144-45). In this job, plaintiff completed sales over the telephone, visited customers, worked in the warehouse and did data entry on the computer (Tr. 145). Subsequently, his ability to work became compromised by his liver disease, which he alleged caused him to get dizzy easily, limited his ability to stand and limited his ability to concentrate (<u>see</u> Tr. 144).

<u>PROCEDURAL HISTORY</u>

Plaintiff filed for disability benefits in April, 2007 and subsequently amended his alleged date of disability onset to June 1, 2006 (Tr. 44, 127-29). His claims were denied initially and following reconsideration (Tr. 82-86, 94-98). Following a hearing held on March 16, 2010 (Tr. 42-81), Administrative Law Judge Gary J. Suttles ("the ALJ") issued a written decision in which he concluded that plaintiff was disabled as of April 20, 2007 (Tr. 21-31).

Plaintiff filed a request for the Appeals Council to review the denial of disability for the time period between June 1, 2006 and April 19, 2007 (Tr. 10-13). On September 24, 2010, the Appeals Council denied plaintiff's request for review, making the written

decision by the ALJ the final agency decision subject to judicial review (Tr. 1-5). See 20 C.F.R. § 404.981.

On November 18, 2010, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision that plaintiff was not disabled between June 1, 2006 and April 19, 2007 (see ECF No. 1). Defendant filed the sealed administrative record of the transcript ("Tr.") on January 25, 2011 (see ECF No. 8). In his Opening Brief, plaintiff contends that the ALJ (1) erred in his review of the medical evidence offered by Drs. Dan Neims, Psy.D. and David Reynolds, Ph.D.; (2) failed in his duty to develop the record; (3) failed to give proper consideration to lay testimony offered by plaintiff's wife, Ms. Jesus Teresa Torres; (4) erroneously relied on the Medical-Vocational Guidelines to deny benefits; and, (5) failed to evaluate properly plaintiff's testimony (see ECF No. 12, pp. 15-16).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled pursuant to the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in

any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). The Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of SSA, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing* SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) (other citation omitted)); see also Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir.

2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." Stout, supra, 454 F.3d at 1054 (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion. Stout, supra, 454 F.3d at 1054-55 (reviewing legal errors found to be harmless).

DISCUSSION

Plaintiff seeks benefits based on disability for the period between June 1, 2006 and April 19, 2007 (see Opening Brief, ECF No. 12, pp. 15-16). The basis for plaintiff's request appears to rely primarily on opinions regarding plaintiff's alleged mental impairments during that time (id.). However, it appears from the record that the first evaluation and examination of plaintiff regarding his mental impairments was obtained on October 1, 2007 from Dr. Carla van Dam (see Tr. 365-70). Among other opinions, she opined that plaintiff's memory about the past may not have been entirely reliable, as he "at times appeared to confabulate slightly" (see Tr. 370).

According to the relevant federal regulation, the Administration requires "evidence from acceptable medical sources to establish whether" or not a claimant has a medically determinable impairment. See 20 C.F.R. § 404.1513. Acceptable medical sources subsequently provided opinions regarding plaintiff's mental impairments potentially existing prior to the date on which they offered their opinions (see Tr. 76, 80,

420). The evidence regarding plaintiff's mental impairments for the relevant time period (June 1, 2006 through April 19, 2007) will be discussed further below, see infra, section 1.

Following a reported fifteen-year history of alcohol consumption, plaintiff was hospitalized with complaints of abdominal swelling on May 17, 2006 (see Tr. 26, 312, 320). At that time, five liters of ascetic fluid were drained during initial paracentesis and plaintiff was diagnosed with alcoholic cirrhosis and hepatic encephalopathy, among other diagnoses (Tr. 312, 320). He was discharged in stable condition on May 26, 2006 (Tr. 312).

During the months following his hospitalization, plaintiff's physical condition was much improved (see Tr. 200). Within a month of his hospitalization, on June 7, 2006 during an office visit with Dr. Charles Donner, M.D. ("Dr. Donner"), plaintiff was "a lot better" (see Tr. 214). Although plaintiff reported feeling weak, he still was "better than he felt previously" (id.).

During an August 9, 2006 office visit with Dr. Donner, plaintiff reported that he was "feeling well" (see Tr. 208). According to the report of Dr. Donner, plaintiff stated that "he feels like his is getting stronger" and he indicated that he was "more active" (id.). On November 14, 2006, Dr. Donner opined that plaintiff "really may have improved too much to be an acute candidate" for liver transplant (see Tr. 204).

During plaintiff's March 6, 2007 office visit with Dr. Donner, plaintiff reported feeling well and indicated that he had no complaints (Tr. 200). At this time, Dr. Donner decreased the amount of one of plaintiff's medications (Tr. 201). Plaintiff's evaluations

by Dr. Donner after his hospitalization demonstrate that at least plaintiff's physical condition regarding his liver appeared to have been improving consistently following his first hospitalization of May 17, 2006 (see Tr. 200-01).

However, plaintiff was admitted to the hospital on March 16, 2007 with diagnoses of gastrointestinal hemorrhage and end-stage liver disease from alcoholism (Tr. 261). He was deemed safe and stable for discharge on March 20, 2007, when he was discharged (Tr. 261). The ALJ found plaintiff to be disabled as of April 20, 2007 (Tr. 30).

    1.  The ALJ did not commit legal error in the evaluation of the medical opinions offered by Dr. Dan Neims, Psy.D. and Dr. David Reynolds, Ph.D.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (citing Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, supra, 81 F.3d at 830-31 (citing Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, supra, 157 F.3d at 725 (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why his own interpretations, rather than those of the doctors, are correct. Reddick, supra, 157 F.3d at 725 (citing Embrey v. Bowen, 849

F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence presented." Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam). The ALJ must only explain why "significant probative evidence has been rejected." Id. (*quoting* Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981)). Finally, an examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, supra, 81 F.3d at 830 (citations omitted); see also 20 C.F.R. § 404.1527(d).

a. Dr. Dan Neims, Psy.D. ("Dr. Neims")

Dr. Neims examined and evaluated plaintiff on July 31, 2008 (see Tr. 414-23). It appears from the record that this was Dr. Neims' first evaluation of plaintiff. He also evaluated plaintiff on February 18, 2010 (see Tr. 566-88). During Dr. Neims' first evaluation of plaintiff on July 31, 2008, he performed a mental status examination and performed multiple tests (Tr. 414, 416-18). Dr. Neims diagnosed plaintiff with depressive disorder secondary to medical and psychological features, among other diagnoses (see Tr. 419-20).

Dr. Neims indicated that plaintiff's global assessment of functioning ("GAF") was 48 (Tr. 420). He also opined that the "etiology of this depressive disorder if (sic) difficult to disentangle relative to medical issues which involve both anergia and fatigue" (id.). He also opined that plaintiff's attentional function appeared to be impaired and that it was "clear that the claimant's ability to maintain pace and persistence in tasks relative to attentional issues are impaired" (id.). He assessed that plaintiff was emotionally distraught regarding his loss of work and that a pattern of vegetative depressive

symptoms was present (id.). Finally, Dr. Neims specifically opined that plaintiff's "alleged onset date of 2005 is seen as reasonable against reviewed evidence" (id.). He noted that plaintiff had presented with a long history of sustained gainful employment (id.).

The ALJ discussed the evaluation by Dr. Neims (Tr. 28-29). The ALJ indicated that "the record fails to establish the presence of a medically determinable mental impairment at any time prior to April 20, 2007" (Tr. 24, 26). In this context, the ALJ noted that:

> a medically determinable impairment must result from an anatomical, physiological, or psychological abnormality which is shown to exist by medically acceptable clinical and laboratory diagnostic techniques (internal citation to 20 C.F.R. § 404.1508). An unsupported allegation will not establish the existence of an impairment. Likewise, a diagnosis that is not documented by acceptable clinical or laboratory findings is not sufficient to establish the presence of an impairment (internal citation to 20 C.F.R. § 404.1508 and SSR 96-3). In this case, the record simply fails to establish the presence of a medically determinable mental impairment at any time prior to the established onset date of April 20, 2007.

(Tr. 24).

Licensed or certified psychologists are considered acceptable medical sources, who can provide evidence sufficient to establish the existence of a medically determinable impairment. See 20 C.F.R. § 404.1513(a)(2). In addition,

> [A] psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment . . . . consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine. . . . In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices (sic) in order to obtain objective clinical manifestation of medical illness. . . . When mental illness is the basis

of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

Blankenship v. Bowen, 874 F.2d 1116, 1121 (6th Cir. 1989) (per curiam) (*quoting* Poulin v. Bowen, 817 F.2d 865, 873-74 (D.C. Cir. 1987) *quoting* Lebus v. Harris, 526 F. Supp. 56, 60 (N.D. Cal. 1981)).

Importantly, the Court observes that Dr. Neims did not provide a definitive opinion that plaintiff was suffering from disabling functional limitations due to his mental impairments in 2005 (see Tr. 420). Instead, he indicated that claimant's initial alleged onset date of 2005 was "seen as reasonable against reviewed evidence" (id.). In addition, Dr. Neims provided opinions regarding specific functional limitations suffered by plaintiff at the time of his July 31, 2008 evaluation utilizing the present tense (see id. (plaintiff "demonstrates sign (sic) and symptoms of depressive disorder"; "Measures tapping attentional function are impaired"; "the claimant's ability to maintain pace and persistence in tasks relative to attentional issues are impaired"; plaintiff "is emotionally distraught")). There does not appear to be any reason to question the opinions of Dr. Neims regarding plaintiff's functional impairments as of July 31, 2008, the date of his first evaluation. However, although Dr. Neims found an alleged onset date of 2005 to be reasonable, he did not specify which particular functional impairments plaintiff suffered, if any, three years prior to his evaluation (id.). For these reasons, the Court concludes that the ALJ did not commit legal error in assessing Dr. Neims' opinion. Since Dr. Neims did

not conclude that plaintiff had any functional impairments prior to July 31, 2008, the record does not contradict the ALJ's conclusion that the documented period of impairment did not begin as early as 2005.

b.  Dr. David Reynolds, Ph.D. ("Dr. Reynolds")

Dr. Reynolds testified at plaintiff's hearing (see Tr. 70-80). He never examined plaintiff.  He testified that he reviewed at least part of plaintiff's medical record, including the evaluations of Dr. Neims and one performed by Dr. Carla van Dam, Ph.D. (Tr. 72-73). He also listened to plaintiff's testimony at the hearing. Based on his review of plaintiff's medical record and what he heard at the hearing, Dr. Reynolds testified about his opinions regarding plaintiff's functional limitations (see Tr. 73-80). Dr. Reynolds indicated that plaintiff had "been functioning inside a highly supportive living arrangement for, for about three to four years now" (Tr. 76). He indicated that that he thought that there was "pretty good evidence" for this assessment, although he did not specify what the "pretty good evidence" was, other than by referencing the reports by Dr. Neims, which Dr. Reynolds assessed as indicating that plaintiff had worsened between July 31, 2008 and February 18, 2010 (see id.).

Finally, when Dr. Reynolds was asked by plaintiff's attorney if he was of the opinion that plaintiff had been impaired to the extent as assessed by him at the hearing since May, 2006, Dr. Reynolds responded in the affirmative (Tr. 80). He did not offer any support for this conclusion, and did not indicate why he held this opinion (see Tr. 73-80).

Plaintiff complains that the ALJ did not credit and adopt the assessment by Dr. Reynolds that plaintiff suffered a listing-level mental impairment since May, 2006 (see

Opening Brief, ECF No. 12, pp. 15-17, 19). As already discussed, in his written decision, the ALJ indicated that "the record simply fails to establish the presence of a medically determinable mental impairment at any time prior to the established onset date of April 20, 2007" (Tr. 24). The ALJ supported this conclusion, in part, by noting that the record contains "no evaluations of the claimant's mental status prior to October 2007" (id.).

The ALJ specifically discussed the testimony by Dr. Reynolds (see Tr. 24-25). The ALJ noted Dr. Reynolds' opinion regarding plaintiff's severe mental impairment since May, 2006 (Tr. 25). The ALJ included the following discussion regarding Dr. Reynolds' testimony:

> The undersigned has afforded little weight to Dr. Reynolds' testimony as it is simply inconsistent with the objective medical record which, as discussed earlier, contains no evidence of any evaluations of the claimant's mental status prior to October 2007. There is simply no evidence in the record to support the 'relation back' of a mental condition as of May 2006. Dr. Reynolds' opinion to that effect is purely speculative and inconsistent with the objective medical record. Furthermore, Dr. Reynolds has never evaluated the claimant and cannot comment on when the claimant's condition either did or did not exist. He can and only had relied on an examination of the objective medical record and can't opine on or make up evidence that doesn't exist. Therefore, I give his opinion little weight as it is not based on the objective medical record.

(Tr. 25).

An opinion by a medical consultant that an impairment existed prior to any documented evaluation by a doctor or psychologist should be supported with specific reasons that clearly support such an opinion. Here, the Court observes that Dr. Reynolds does not appear to have supported his opinion with any specific references to plaintiff's medical record, but provides only a vague statement that "there's pretty good evidence"

for this assertion (see Tr. 76), without citing such evidence. Based on this Court's review of the testimony, Dr. Reynolds does not appear to have provided any substantial support for his opinion that plaintiff suffered disabling mental impairments sufficient to preclude all work activity beginning in May, 2006 (see Tr. 73-80). In addition, the ALJ appropriately noted that Dr. Reynolds did not examine plaintiff in a clinical setting and therefore did not perform a mental status examination (Tr. 25). Finally, the Court notes that Dr. Reynolds opined regarding plaintiff's mental impairments as of almost a year and a half prior to the first psychological evaluation of plaintiff. For these reasons and based on the relevant record, the Court finds no legal error in the ALJ's refusal to adopt Dr. Reynolds' opinion that plaintiff's mental impairments existed in May, 2006. The ALJ provided "specific and legitimate reasons that are supported by substantial evidence in the record" in support of his assessment of the opinions of Dr. Reynolds. See Lester, supra, 81 F.3d at 830-31.

2. The ALJ erroneously relied on the Medical-Vocational Guidelines ("the Grids") despite evidence of potentially significant non-exertional impairments.

At step five, the burden of proof shifts to the Commissioner to produce evidence of jobs existing in significant numbers in the national economy that claimant could perform in light of claimant's age, education, work experience, and residual functional capacity. See Tackett v. Apfel, 180 F.3d at 1099; Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996) (citations omitted). There are two ways that the ALJ can do this: "(a) by the testimony of a vocational expert, or (b) by reference to the [Commissioner's] Medical-Vocational Guidelines at 20 C.F.R. pt. 404,

subpt. P, app. 2" (the "Grids"). Tackett, 180 F.3d at 1100-01 (*citing* Desrosiers v. Secretary of Health and Human Servs., 846 F.2d 573, 577-78 (9th Cir. 1988)); see also Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (*citing* Tackett, 180 F.3d at 1100-01)).

In this matter, although the ALJ indicated in his opinion that Mr. William H. Weiss, an impartial vocational expert, testified at the hearing (Tr. 21), the transcript of the hearing does not include the testimony of any vocational expert (Tr. 21; see also Tr. 42-81). Instead, the ALJ here apparently relied solely on the Girds for his step-five finding that prior to April 20, 2007, "there were jobs that existed in significant numbers in the national economy that the claimant could have performed" (see Tr. 29-30).

An ALJ's ability to rely on the Grids is limited, however, as noted by the Ninth Circuit in describing their purpose and function:

> In some cases, it is appropriate for the ALJ to rely on the Medical-Vocational Guidelines to determine whether a claimant can perform some work that exists in 'significant numbers' in the national economy. The Medical-Vocational Guidelines are a matrix system for handling claims that involve substantially uniform levels of impairment.
>
> The Guidelines present, *in table form,* a short-hand method for determining the availability and numbers of suitable jobs for a claimant. These tables are commonly known as 'the grids.' The grids categorize jobs by their physical-exertional requirements and consist of three separate tables-one for each category: 'maximum sustained work capacity limited to sedentary work,' 'maximum sustained work capacity limited to light work,' and 'maximum sustained work capacity limited to medium work.' Each grid presents various combinations of factors relevant to a claimant's ability to find work. The factors in the grids are the claimant's age, education, and work experience. For each combination of these factors, . . . the grids direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements.

This approach allows the Commissioner to streamline the administrative process and encourages uniform treatment of claims.

The Commissioner's need for efficiency justifies use of the grids at step five where they *completely and accurately* represent a claimant's limitations. In other words, a claimant must be able to perform the full range of jobs in a given category, i.e., sedentary work, light work, or medium work.

Tackett, supra, 180 F.3d at 1101 (emphasis in original) (internal citations and footnote omitted).

Before concluding that the Administrative Law Judge in Tackett had committed reversible error by concluding that the claimant was not disabled without the testimony of a vocational expert and with sole reliance on the Grids, the Ninth Circuit went on to explain when use of the Grids is error, requiring reversal:

This court has recognized that significant non-exertional impairments, such as poor vision or inability to tolerate dust or gases, may make reliance on the grids inappropriate. We have also held that pain can be a non-exertional limitation.

However, the fact that a non-exertional limitation is alleged does not automatically preclude application of the grids. The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations.

. . . . A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines. In such a case, the guidelines would be inapplicable.

Id. at 1101-02 (*quoting* Desrosiers, supra, 846 F.2d at 577); see also Osenbrock, supra, 240 F.3d at 1162 ("Where the claimant has significant non-exertional impairments, however, the ALJ cannot rely on the Guidelines").

Therefore, when a claimant suffers from significant non-exertional impairments that may decrease the range of work he could do when considering only his exertional

limitations, an explicit determination must be made regarding whether or not "a

claimant's non-exertional limitations significantly limit the range of work permitted by

his exertional limitations." See Tackett, supra, 180 F.3d at 1101-02 (*quoting* Desrosiers,

supra, 846 F.2d at 577). Or put another way by the Ninth Circuit in Cooper, "the grids

serve as a ceiling and the ALJ must examine independently the additional adverse

consequences resulting from the non-exertional impairment." Cooper v. Sullivan, 880

F.2d 1152, 1155-56 (9th Cir.1989).

In this matter, plaintiff contends that the ALJ failed to examine explicitly the

effects of his non-exertional impairments and limitations before relying solely on the

Grids and failing to obtain vocational expert testimony (see Opening Brief, ECF No. 12,

pp. 2, 16, 17, 19; Reply, ECF No. 19, pp. 4-6). Specifically, plaintiff asserts that mental

impairments, as well as other non-exertional impairments, such as fatigue, resulting from

his physical impairments, precluded sole reliance on the Grids by the ALJ (see, e.g.,

Opening Brief, ECF No. 12, pp. 16-17). Defendant argues that because the ALJ properly

found no mental impairment during the relevant time frame, he properly relied on the

Grids (Response, ECF No. 18, p. 12). However, even if the ALJ determined properly that

the severity of plaintiff's mental impairments was not established as of June, 2006, it

does not necessarily follow that the Grids "*completely and accurately*" represented all of

plaintiff's mental limitations during the relevant time frame. See Tackett, supra, 180 F.3d

at 1101. If the Grids did not completely and accurately represent all of plaintiff's non-

exertional impairments from June 1, 2006 through April 19, 2007, then the ALJ's use of

the Grids was not justified. See id.

Plaintiff points to other non-exertional impairments, such as fatigue, resulting from his physical impairments, which preclude a finding that the ALJ's sole reliance on the Grids was proper (see Opening Brief, ECF No. 12, pp. 2, 16-17). During the relevant time frame of June 1, 2006 through April 19, 2007, the ALJ found that plaintiff suffered from the severe impairments of chronic liver disease and cirrhosis, among other impairments (Tr. 24).

On June 7, 2006, plaintiff reported to Dr. Donner that he was feeling weak (see Tr. 214). At his hearing, plaintiff testified that about six months after his hospitalization, he tried to golf but only "made it about six holes" (Tr. 54). Supporting plaintiff's allegations, Dr. Reynolds testified that he was familiar with the results of liver disease and testified that "chronic liver disease gives one very low energy" (Tr. 77).

According to the Ninth Circuit, before relying on the Grids, the "ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." Tackett, supra, 180 F.3d at 1101-02 (quoting Desrosiers, supra, 846 F.2d at 577). The ALJ here committed legal error by failing to determine whether or not plaintiff's alleged non-exertional limitations, for example that of fatigue, caused by his severe impairments, significantly limited the range of work permitted by plaintiff's exertional limitations. See Tackett, supra, 180 F.3d at 1101-02; see also Desrosiers, supra, 846 F.2d at 577. This error is harmful because a "non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated" by the Grids. See Tackett, supra, 180 F.3d at 1101-02 (quoting Desrosiers, supra, 846 F.2d at 577). According to the Ninth Circuit, when this

circumstance is present, the Grids are inapplicable. See Tackett, supra, 180 F.3d at 1101-02; see also Desrosiers, supra, 846 F.2d at 577. For this reason, the Court concludes that the ALJ's written decision should be set aside and this matter should be reversed and remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings. See Bayliss, supra, 427 F.3d at 1214 n.1.

     3.  Following remand, plaintiff's credibility should be re-assessed.

The ALJ's credibility determinations "must be supported by specific, cogent reasons." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)); Reddick, supra, 157 F.3d at 722 (citations omitted); Smolen, supra, 80 F.3d at 1284. The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Smolen, supra, 80 F.3d at 1284.

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; Smolen, supra 80 F.3d at 1281 (citing Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)). First, the ALJ must determine whether or not there is a medically determinable

impairment that reasonably could be expected to cause the claimant's symptoms. 20

C.F.R. §§ 404.1529(b), 416.929(b); <u>Smolen</u>, <u>supra</u>, 80 F.3d at 1281-82.  Once a claimant

produces medical evidence of an underlying impairment, the ALJ may not discredit the

claimant's testimony as to the severity of symptoms "based solely on a lack of objective

medical evidence to fully corroborate the alleged severity of pain." <u>Bunnell v. Sullivan</u>,

947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing* <u>Cotton</u>, 799 F.2d at 1407).

Absent affirmative evidence that the claimant is malingering, the ALJ must provide

specific "clear and convincing" reasons for rejecting the claimant's testimony. <u>Smolen</u>,

<u>supra</u>, 80 F.3d at 1283-84; <u>Reddick</u>, <u>supra</u>, 157 F.3d at 722 (*citing* <u>Lester v. Chater</u>, 81

F.3d 821, 834 (9th Cir. 1996); <u>Swenson v. Sullivan</u>, 876 F.2d 683, 687 (9th Cir. 1989)).

The ALJ here found that during the relevant time period, plaintiff suffered from

the severe impairment of chronic liver disease (Tr. 24), and Dr. Reynolds testified that

"chronic liver disease gives one very low energy" (Tr. 77). Therefore, the ALJ

determined that there was a medically determinable impairment that reasonably could

have been expected to cause the claimant's symptom of fatigue, which the record reflects

that plaintiff may have suffered from (<u>see</u> Tr. 54, 214).  <u>See also</u> 20 C.F.R. §§

404.1529(b), 416.929(b); <u>Smolen</u>, <u>supra</u>, 80 F.3d at 1281-82.  As a result, the ALJ was

required to provide specific "clear and convincing" reasons for rejecting the claimant's

testimony and for not considering these symptoms when determining plaintiff residual

functional capacity and when determining whether or not significant jobs existed in the

national economy that plaintiff could have performed. <u>See</u> <u>Smolen</u>, <u>supra</u>, 80 F.3d at

1283-84; <u>Reddick</u>, <u>supra</u>, 157 F.3d at 722. However, the ALJ did not give any reason to discount plaintiff's testimony regarding his symptom of fatigue, committing legal error.

    4.  <u>Following remand, the lay testimony should be evaluated anew</u>.

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," <u>see</u> 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources," <u>see</u> 20 C.F.R. § 404.1513 (d)(4), and "other sources" such as nurse practitioners and naturopaths, who are considered other medical sources, <u>see</u> 20 C.F.R. § 404.1513 (d)(1). <u>See also</u> <u>Turner v. Comm'r of Soc. Sec.</u>, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (<em>citing</em> 20 C.F.R. § 404.1513(a), (d), (d)(3)). An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." <u>Turner</u>, <u>supra</u>, 613 F.3d at 1224 (<em>citing</em> <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001)); <u>see also</u> <u>Van Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because "[i]n determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." <u>Stout v. Commissioner, Social Security Administration</u>, 454 F.3d 1050, 1053 (9th Cir. 2006) (<em>citing</em> <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993)). Recently, the Ninth Circuit characterized lay witness testimony as "competent evidence," again concluding that in order for such evidence to be disregarded, "the ALJ must provide 'reasons that are germane to each

witness.'" <u>Bruce v. Astrue</u>, 557 F.3d 1113, 1115 (9th Cir. 2009) (*quoting* <u>Van</u> <u>Nguyen</u>, <u>supra</u>, 100 F.3d at 1467).

The Court notes that lay testimony from plaintiff's spouse, Ms. Jesus Teresa Torres, suggests that plaintiff was experiencing difficulty communicating properly ever since he was hospitalized for the first time, on May 17, 2006 (<u>see</u> Tr. 65). Despite this specific testimony regarding plaintiff's alleged functional limitation affecting his ability to work from June 1, 2006 through April 19, 2007, the ALJ failed to mention this aspect of her testimony and failed to give any reason to discount it (<u>see</u> Tr. 26). In order for such evidence to be disregarded, however, "the ALJ must provide 'reasons that are germane to each witness.'" <u>Bruce</u>, <u>supra</u>, 557 F.3d at 1115; <u>see also</u> <u>Van</u> <u>Nguyen</u>, <u>supra</u>, 100 F.3d at 1467). The ALJ committed legal error by failing to address this alleged functional limitation and by failing to give any reason to disregard it. <u>See</u> <u>Bruce</u>, <u>supra</u>, 557 F.3d at 1115. Legal error in the evaluation of lay testimony cannot be considered harmless unless the Court can conclude with confidence "that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." <u>Stout</u>, <u>supra</u>, 454 F.3d at 1056 (reviewing cases).

5. <u>Plaintiff has not demonstrated any harm in the ALJ's failure to develop the record</u>.

Although the ALJ must assist in developing the record, the claimant has the burden of proof. <u>Armstrong v. Comm'r of SSA</u>, 160 F.3d 587, 589 (9th Cir. 1998) (*citing* <u>Johnson</u>, <u>supra</u>, 60 F.3d at 1432). The Ninth Circuit has held that if the record is

ambiguous as to the onset date of disability, the ALJ must call a medical expert to assist in determining the onset date. Armstrong, supra, 160 F.3d at 589-90.

Plaintiff contends that the ALJ failed in his duty to develop the record because he failed to call on the services of a medical advisor when the disability onset date had to be inferred (see Opening Brief, ECF No. 12, pp. 15-16). However, plaintiff acknowledges that plaintiff arranged for "the testimony of Dr. Reynolds who regularly serves as a medical advisor" (see id., p. 15). Dr. Reynolds testified at plaintiff's hearing and his testimony was discussed by the ALJ (see Tr. 24-25, 70-80). Although the ALJ may have been required to call on the services of a medical advisor, he was not required to accept or adopt the findings of said medical advisor. As argued by defendant (see Response, ECF No. 18, p. 10), plaintiff here has failed to demonstrate any harm due to the ALJ's failure to call on the services of a medical advisor in this matter.

6. This matter should be remanded for additional administrative proceedings.

The Ninth Circuit has put forth a "test for determining when evidence should be credited and an immediate award of benefits directed." Harman v. Apfel, 211 F.3d 1172, 1178, 2000 U.S. App. LEXIS 38646 at **17 (9th Cir. 2000). It is appropriate where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

_Harman_, 211 F.3d at 1178 (_quoting_ _Smolen v. Chater_, 80 F.3d 1273, 1292 (9th Cir.1996)).

Here, outstanding issues must be resolved. _See_ _Smolen_, _supra_, 80 F.3d at 1292. There is evidence that was not evaluated specifically by the ALJ, such as the testimony by plaintiff and plaintiff's spouse regarding specific functional limitations. In addition, the medical record does not demonstrate conclusively that plaintiff must be found disabled for the period of time between June 1, 2006 and April 19, 2007.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. _Reddick v. Chater_, 157 F.3d 715, 722 (9th Cir. 1998); _Andrews v. Shalala_, 53 F.3d 1035, 1043 (9th Cir. 1995). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. _Sample v. Schweiker_, 694 F.2d 639, 642 (9th Cir. 1999) (_quoting_ _Waters v. Gardner_, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (_citing_ _Calhoun v. Bailar_, 626 F.2d 145, 150 (9th Cir. 1980))).

Therefore, remand is appropriate to allow the Commissioner the opportunity to consider properly all of the evidence as a whole and to incorporate the properly considered evidence into the consideration of plaintiff's credibility and residual functional capacity as well as into the consideration of whether or not there were jobs that existed in significant numbers in the national economy that plaintiff could have performed prior to April 20, 2007. _See_ _Sample_, _supra_, 694 F.2d at 642.

CONCLUSION

The ALJ erred by failing to determine whether or not plaintiff's alleged non-exertional limitations, such as fatigue, caused by his severe impairments, significantly limited the range of work permitted by plaintiff's exertional limitations. Therefore, the ALJ's sole reliance on the Medical-Vocational Guidelines ("the Grids") was legal error.

Based on these reasons and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on December 30, 2011, as noted in the caption.

Dated this 8th day of December, 2011.

J. Richard Creatura
United States Magistrate Judge